UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                 :
                                 :

KHALID AWAN,
                                 :

          Plaintiff,         :        **REPORT AND RECOMMENDATION**
                                 :

     -against-             :         16 Civ. 871 (CBA) (VMS)
                                 :

UNITED STATES OF AMERICA,
                                 :

         Defendant.       :

                                 :
------------------------------------------------------------ X

**Vera M. Scanlon, United States Magistrate Judge:**

      Plaintiff Khalid Awan ("Plaintiff"), appearing pro se, brings this action against Defendant United States of America ("Defendant" or the "Government"). Plaintiff alleges that Defendant and its employees violated: (1) his rights under Article 36 of the Vienna Convention on Consular Relations, and (2) the Alien Tort Claims Act (also known as the "Alien Tort Statute" or the "ATS") of 28 U.S.C. § 1350, by failing to comply with the provisions of Article 36. See Compl. ECF No. 1. Defendant moves to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of jurisdiction and failure to state a claim. See ECF Nos. 27, 44, generally. In response, Plaintiff, inter alia, seeks to amend the Complaint to reframe his claims as actionable under Bivens. See ECF No. 20, generally. The Parties' motions are before this Court on referral from the Honorable Carol Bagley Amon. For the reasons set forth below, this Court respectfully recommends:

      (a) that Defendant's motion to dismiss pursuant to Rule 12(b)(1) for lack of jurisdiction
          be granted;

(b) that Defendant's motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim be granted;

(c) that Plaintiff's request to amend the Complaint be denied as futile; and,

(d) that this action be dismissed.

## I.    BACKGROUND

The following facts are taken from the Complaint and are accepted as true for the purposes of this motion.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

Plaintiff is a citizen of Canada, an immigration consultant and a member of the Canadian Bar Association.  Compl., ECF No. 1 ¶ 11.  He pled guilty to money laundering and fraud charges in the United States in late 2001, for which he was sentenced to 60 months in prison.  Id. On or about January 27, 2006, while serving his sentence, Plaintiff was served a writ of ad testificandum and transferred to the Metropolitan Detention Center ("MDC") in Brooklyn, New York.  Id. ¶ 12.  On February 17, 2006, while in Brooklyn, Plaintiff was interrogated by several FBI agents regarding his connection to an alleged Indian Terrorist Organization, the Khalistan Commando Force ("KCF").  Id. ¶ 13.  On March 14, 2006, Plaintiff was arrested and charged with providing material support and resources to the KCF.  Id. ¶ 14.

As Plaintiff exited an office in the Brooklyn Courthouse, he noticed a large sign urging foreign citizens to tell their arresting agents to inform their home country's Consul General of their arrest.  Id.  Previously unaware of this right, Plaintiff promptly requested that FBI Agents Ryan Maxwell ("Agent Maxwell") and Robert Napolitano ("Agent Napolitano") (referred to collectively as "Defendant Agents" or "the Agents") notify the Canadian Consulate of his arrest. Id.  In response, Agent Maxwell left Plaintiff in Agent Napolitano's custody, entered the office,

then returned a few minutes later and falsely informed Plaintiff that the Canadian Consulate had been notified of Plaintiff's arrest and detention.  Id.  Plaintiff himself wrote to the Canadian Consulate on June 5, 2006, and apprised the Consulate of his detention at the MDC.  Id. ¶ 16; id. Ex. B.  Plaintiff later learned that Agent Maxwell did not provide official notice to the Canadian Consulate until November 17, 2006, as confirmed by Consulate correspondence that Plaintiff received dated August 14, 2007.  Id. Ex. B.

Plaintiff filed his Complaint and alleged that the foregoing violated his rights under Article 36 of the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, T.I.A.S. N. 6820 (the "Vienna Convention").  Id. ¶ 17.  Plaintiff sued the United States; Agent Ryan; Agent Maxwell; then United States Attorney the Honorable Roslynn R. Mauskopf;[1] Assistant United States Attorney Lawrence P. Ferazani, Jr.; Federal Investigator John Ross; Mark J. Mershon; and unidentified Doe defendants.  Id., generally; ECF No. 10.  Plaintiff contended that Defendants (1) failed to inform him of his rights to contact or notify the consulate and (2) failed to make the appropriate notifications themselves.  ECF No. 1 ¶¶ 17-20.  Plaintiff further contended that these failures constituted one or more violations of the ATS, 28 U.S.C. § 1350.  Compl., ECF No. 1 ¶ 21.

Defendant United States appeared in this matter and filed notices certifying, via authority vested by the Attorney General under 28 C.F.R. § 15.4, that each individual defendant was acting within the scope of their employment under their respective employers (the FBI and Department of Justice) at the time of the events giving rise to Plaintiff's Complaint.  See ECF Nos. 13, 17, 28, generally.  Under the Federal Employees Liability Reform and Tort Compensation Act of

_____

[1] On October 18, 2007, the Honorable Roslynn R. Mauskopf was appointed as a United States District Judge in this Court.

1988, also known as the Westfall Act, 28 U.S.C. § 2679, the United States of America was substituted for the individual federal defendants with respect to all of the claims set forth in the complaint.  Id.

Defendant moves to dismiss this action on the grounds that: (1) Plaintiff fails to state a claim under Rule 12(b)(6) because Article 36 does not create a private right of action, and he cannot allege a cause of action under the ATS; and (2) the Court lacks subject matter jurisdiction as the United States is the sole defendant and has not waived its sovereign immunity.  See Def. Mem., ECF No. 27-4, pp. 6-13.  In response, Plaintiff filed an opposition and requested to amend his pleadings.  See ECF Nos. 20, 41.  In his opposition, Plaintiff concedes that he lacks a private right of action arising from Defendant's alleged violations of his rights under the Vienna Convention.[2]  See Opp., ECF No. 41, p. 6.  He argues instead that these rights under the Vienna Convention created for him a property interest, the deprivation of which triggered due process concerns actionable under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 391 (1971).  Id., pp. 7-10.  Defendant replies, inter alia, that any such Bivens claim would fail as untimely, and that any amendment to add such a claim should be denied as futile. See Reply, ECF No. 44 p. 7; ECF No. 27-7.

## II.    DISCUSSION

### A.  Standard Of Review

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  "A

---

[2] Shortly after filing his opposition papers, Plaintiff voluntarily dismissed his claims against Defendants Mauskopf, Ferazini, Ross and Mershon.  ECF No. 40.  According to Plaintiff, only the claims against Agent Ryan, Agent Maxwell and the United States remain.

plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id., at 113. Further, in adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings. See id. Otherwise, the standards for reviewing motions to dismiss under Rule 12(b)(1) and 12(b)(6) are identical. See Langella v. Bush, 161 F. App'x 140, 141 (2d Cir. 2005); Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003); Allstate Ins. Co. v. Elzanaty, 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citation omitted); see Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir. 2013). "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks & citations omitted); see Thompson v. United States, No. 18-2608, 2019 U.S. App. LEXIS 35026, at *2, 2019 WL 6245757, at *1 (2d Cir. Nov. 22, 2019). The Court does note that although Plaintiff proceeds pro se, he has legal qualifications in Canada, a constitutional

democracy with a common law system, so Plaintiff has education relevant to pursuing this case. See ECF No. 1 ¶ 11.

**B. Sovereign Immunity**

As noted above, the Government has moved to dismiss this matter pursuant to Rule 12(b)(1) for lack of jurisdiction because the Attorney General has certified that the Defendant Agents acted within the scope of their employment in connection with Plaintiff's allegations; thus, the United States should be substituted in their place as the sole defendant under the Westfall Act (28 U.S.C. § 2679), and the United States has not waived its sovereign immunity. See ECF No. 27, generally.

**i.  Plaintiff's Challenge To The Government's Certification Should Be Denied**

In response to the Government's assertion of sovereign immunity, Plaintiff has moved for a de novo review of the Attorney General's certification that the individual Defendant Agents were acting within the scope of their employment at the time of the incidents alleged in the Complaint.  ECF No. 19.

Under the Westfall Act:

> [u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).  Plaintiff is only entitled to a review of this assertion if his opposition papers allege with particularity facts relevant to the scope-of-employment issue.  See McHugh v. Univ. of Vermont, 966 F.2d 67 (2d Cir. 1992), overruled in part, Osborn v. Haley, 549 U.S. 225 (2007); Tomscha v. Greenberg, 04 Civ. 2953 (DLC), 2004 U.S. Dist. LEXIS 16676, at *7, 2004 WL 1878749, at *3 (S.D.N.Y. Aug. 20, 2004), aff'd, United States v. Tomscha, 150 F. App'x 18,

19 (2d Cir. 2005).  Even then, Plaintiff bears the burden of showing that certification was

improper.  See Green v. Hinds, No. 17 Civ. 5422 (DRH) (ARL), 2018 U.S. Dist. LEXIS 208965,

at *19, 2019 WL 624929, at *5 (E.D.N.Y. Dec. 10, 2018) (citing Smith v. Brown, 296 F. Supp.

3d 648, 655 (S.D.N.Y. 2017); Regnante v. Sec. & Exch. Officials, 134 F. Supp. 3d 749, 768

(S.D.N.Y. 2015); Lipkin v. SEC, 468 F. Supp. 2d 614, 623 (S.D.N.Y. 2006)).  Here, Plaintiff has

not met that burden.

### a.   The Agents Acted Within The Scope Of Their Employment

"In reviewing a § 2679(d)(1) certification, a court applies state law principles concerning

the scope of employment."  Smith, 296 F. Supp. 3d at 655.  "In this case, New York law

provides that an employee's act is within the scope of employment if 'the act was done while the

servant was doing his master's work, no matter how irregularly, or with what disregard of

instructions.'"  Green, 2018 U.S. Dist. LEXIS 208965, at *19 (quoting Smith, 296 F. Supp. 3d at

655 (citing Riviello v. Waldron, 47 N.Y.2d 297, 302 (1979))); see Lundberg v. State of New

York, 25 N.Y.2d 467, 470 (N.Y. 1969) ("An employee acts in the scope of his employment when

he is doing something in furtherance of the duties he owes to his employer and where the

employer is, or could be, exercising some control . . . over the employee's activities.").  New

York courts evaluating whether an employee's act occurred within the scope of his or her

employment apply a five-factor analysis:

> [1] the connection between the time, place and occasion for the act; [2] the history
> of the relationship between employer and employee as spelled out in actual
> practice; [3] whether the act is one commonly done by such an employee; [4] the
> extent of departure from normal methods of performance; [5] and whether the
> specific act was one that the employer could reasonably have anticipated.

Riviello, 47 N.Y.2d at 303.  "Only the general type of conduct, not the specific act, need have

been within an employer's reasonable expectation."  Tomscha, 2004 U.S. Dist. LEXIS 16676, at

*8 (S.D.N.Y. Aug. 20, 2004) (citing <u>Riviello</u>, 47 N.Y.2d at 304). "The overall question being asked is whether the employee was 'acting not on his or her own behalf, but in the employer's service.'" <u>Smith</u>, 296 F. Supp. 3d at 656 (quoting <u>Rausman v. Baugh</u>, 248 A.D.2d 8, 10 (2d Dep't 1998)).

Plaintiff conceded in the Complaint that the Agents acted within the scope of their employment. <u>See</u> ECF No. 1 ¶ 3 ("At all times relevant hereto, [Defendant Agents] . . . were personnel of the USA . . . acting in the capacity of agents, servants, and employees of Defendant USA, and within the scope of their employment as such.").[3] Nonetheless, he contests the certification on the ground that "the individual defendants could not have been acting within the scope of their employment for the United States when their acts and omissions were incompatible with good faith execution of their assigned duties." ECF No. 19. Plaintiff contends that while Defendants acted in the discharge of their duties and because he was within their custody in federal detention centers, at courthouses and offices, Defendants owed him consular notification duties under Article 36. <u>See</u> ECF Nos. 1, 20, <u>generally</u>. Taken as true, Plaintiff's contentions that the Defendant Agents' actions were "incompatible with good faith execution of their duties" are insufficient to render those actions outside of the scope of their employment under New York law. <u>See Ahluwalia v. St. George's Univ.</u>, 626 F. App'x 297, 299-300 (2d Cir. 2015) ("Dean Rao's decision to expel Ahluwalia was plainly within the scope of his employment . . . . This is so even if, as alleged, Dean Rao acted arbitrarily and in bad faith . . . .") (quoting <u>Sagal-Cotler v. Bd. of Educ.</u>, 988 N.E.2d 502, 504 (N.Y. 2013)). Beyond these

---

[3] These allegations are contradicted by Plaintiff's proposed Amended Complaint. <u>Compare</u> ECF No. 1 ¶ 3 <u>with</u> ECF No. 20 ¶ 30 (alleging that Defendants' actions were under color of law but "effectively and in substantial part outside the scope of their employment where fraud and false conduct and statements are not consistent with good-faith discharge of governmental duties").

conclusory allegations, Plaintiff's filing to contest certification, his pleadings, and his amended pleadings do not state with particularity facts relevant to the scope-of-employment issue. See generally, ECF Nos. 1, 19, 20. Judicial review of the certification is therefore not required. See Tomcha, 2004 U.S. Dist. LEXIS 16676, at *8.

Were the Court to undertake the review, Plaintiff's allegations would be insufficient to conclude under New York law that Agents Ryan and Maxwell were not acting within the scope of their employment at the times of the alleged acts and omissions. See Smith, 296 F. Supp. 3d at 659 ("where 'the certification, the pleadings, the affidavits, and any supporting documentary evidence do not reveal an issue of material fact,' the employee should not be 'burdened with discovery'") (quoting Griebsch v. Weaver, 7:05 Civ. 958 (TJM), 2005 U.S. Dist. LEXIS 44250, 2005 WL 2260374, at *2 (N.D.N.Y. Sept. 16, 2005) (citing Gutierrez de Martinez v. DEA, 111 F.3d 1148, 1153-55 (4th Cir. 1997))). The five-factor analysis weighs decidedly in favor of finding the Agents' actions were within the scope of their federal employment. First, the places, time and occasions for the alleged acts and omissions were inextricably bound with their employment, as it is beyond dispute that federal agents routinely maintain custody of defendants for transport between government agencies. Second, Plaintiff himself alleges that the duty to contact a consulate was a responsibility of arresting agents. See ECF No. 20 ¶ 19 (alleging that a sign indicated that arresting agents make consular notifications on the request of foreign nationals in custody); Opp., ECF No. 41 ¶ 15 (describing consular notification as "the government's responsibilit[y] under the [Vienna] Convention" and alleging that the agents "feigned compliance with the convention"). Third, Plaintiff's allegation that he observed a large sign posted in the courthouse office urging foreign nationals to "tell arresting agents to inform the consulate of their home country" demonstrates that an agent's potential failure to notify or

inform under Article 36 was generally anticipated, or, at the very least, could reasonably have been anticipated by the Government.  ECF No. 20 ¶ 19.  Fourth, the sign suggests a question should prompt an agent's inquiry, as the Government anticipated an agent might fail to make the request.  Even the alleged error is one the Government could anticipate as employees sometimes perform their duties late.  Last, there is no suggestion that any of the acts or omissions occurred "for personal reasons separate and distinct from the interests of [the Agents'] employer."  Bello v. United States, 93 F. App'x 288, 291 (2d Cir. 2004) (citing Ierardi v. Sisco, 119 F.3d 183, 188 (2d Cir. 1997) (holding correction officer not acting within scope of employment when he engages in sexual harassment); N.X. v. Cabrini Med. Ctr., 97 N.Y.2d 247, 252 (N.Y. 2002) (holding surgeon not acting within scope of employment when he performed contraindicated examination for self-gratification)).

### b.  Plaintiff Does Not Have A Cognizable Due Process Claim

Plaintiff's attempt to recast his claims as arising under the Due Process clause does not alter this analysis.  In his opposition, Plaintiff claims a property interest in his Article 36 rights and argues that they are therefore subject to procedural due process protections.  See Opp., ECF No. 41 pp. 6-9.  If this were indeed a cognizable claim, then the Government's certification and substitution under 28 U.S.C. § 2679(d) would be improper for that claim, as violations of the Constitution of the United States are outside the purview of the Westfall Act.  See 28 U.S.C. § 2679(b)(2)(A) (exclusive remedy provision of § 2679(b)(1) does not apply to civil actions against employees of the Government for violations of the Constitution); accord Turkmen v. Ashcroft, No. 02 Civ. 2307 (DLI) (SMG), 2018 U.S. Dist. LEXIS 137492, at *10-11, 2018 WL 4026734 (E.D.N.Y. Aug. 13, 2018) (The Westfall Act's limit on liability does not apply to "a civil action against an employee of the Government which is brought for a violation of the

Constitution of the United States.") (quoting 28 U.S.C. § 2679(b)(2)(A)); Tyson v. Willauer, No. 3:01 Civ. 1917 (GLG), 2002 WL 31094951, at *4 (D. Conn. May 28, 2002) ("Congress created only two exceptions to the Westfall Act--federal constitutional claims and federal statutory claims.") (citing United States v. Smith, 499 U.S. 160, 166–67 (1991) ("Congress' express creation of these two exceptions convinces us that the Ninth Circuit erred in inferring a third exception that would preserve tort liability for Government employees when a suit is barred under the FTCA.")).

Plaintiff has not met his burden of properly alleging that he has a cognizable due process claim under the Constitution.  Although a property interest can take different forms, it must have "some ascertainable monetary value" to qualify for due process protection.  Town of Castle Rock v. Gonzales, 545 U.S. 748, 766 (2005) ("[T]he right to have a restraining order enforced does not 'have some ascertainable monetary value,' as even our 'Roth-type property-as-entitlement' cases have implicitly required.") (quoting Merrill, The Landscape of Constitutional Property, 86 Va. L. Rev. 885, 964 (2000)); see Del. Riverkeeper Network v. FERC, 895 F.3d 102, 109 (D.C. Cir. 2018) (citations omitted); Jackson v. Sedgwick Claims Mgmt. Servs., 731 F3d 556, 576 (6th Cir. 2013) (citing Castle Rock, 545 U.S. at 766); Brown v. City of Barre, 878 F. Supp. 2d 469, 483 (D. Vt. 2012) (citation omitted).  Here, Plaintiff's Article 36 rights to consular notification do not have any ascertainable monetary value; they therefore do not qualify as a "property interest" for purposes of procedural due process protection.  See, e.g., Del. Riverkeeper Network, 895 F.3d, at 108-09 ("For one thing, the right to a preserved environment cannot be bought or sold—and thus has no 'ascertainable monetary value' as the Supreme Court's 'property-as-entitlement cases have implicitly required.'") (quoting Town of Castle Rock, 545 U.S. at 766); Fowler v. City of Phila. Records Dep't, No. 16 Civ. 6700 (WB), 2018 U.S. Dist. LEXIS 59637, at *10, 2018 WL

1705960, at *4 (E.D. Pa. Apr. 9, 2018) (no property right to performance reviews because, inter alia, they do not "implicate 'some ascertainable monetary value'") (quoting Castle Rock, 545 U.S. at 766); Alston v. Cty. of Sacramento, No. 2:11 Civ. 2291 (GEB) (GGH), 2012 U.S. Dist. LEXIS 95494, at *15, 2012 WL 2839825, at *5 (E.D. Cal. July 10, 2012) (plaintiff had no protected property interest in performance of an internal sheriff's department investigation for purposes of the Due Process Clause) (quoting Castle Rock, 545 U.S. at 766-768), R & R adopted, 2012 WL 3205142 (E.D. Cal. Aug. 3, 2012); see also United States v. Bustos de la Pava, 268 F.3d 157, 165 (2d Cir. 2001) ("We have previously held that the consular-notification provision of the Vienna Convention and its related regulations do not create any "fundamental rights" for a foreign national.") (citing Waldron v. INS, 17 F.3d 511, 518 (2d Cir. 1994) ("Although compliance with our treaty obligations is clearly required, we decline to equate [the consular notification] provision [of the Vienna Convention] with fundamental rights.") (alteration in citing reference)).

This Court therefore respectfully recommends finding that Plaintiff has failed to plead with particularity a challenge to the Westfall designation; that even if he did, the facts he alleges confirm that the Agents acted in the scope of their employment; that his proposed due process allegations fail to exempt his claims from the Westfall Act; and upholding the Government's certification and substitution.

### ii.  The Court Lacks Jurisdiction Over Plaintiff's Claims Under Article 36 And The ATS

"Under the Constitution, the United States Government possesses absolute immunity from suit in its courts without its consent 'and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'"  Smith, 296 F. Supp. 3d at 660 (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)) (further citations omitted).  "The doctrine

of sovereign immunity is jurisdictional in nature . . . and therefore to prevail, the plaintiff bears

the burden of establishing that her claims fall within an applicable waiver."  Makarova, 201 F.3d

at *113 (citing FDIC v. Meyer, 510 U.S. 471, 475 (1994); Ohio Nat'l Life Ins. Co. v. United

States, 922 F.2d 320, 324 (6th Cir. 1990); Baker v. United States, 817 F.2d 560, 562 (9th Cir.

1987)).  Plaintiff does not argue that his claims under the ATS or Article 36 might fall within an

applicable waiver.  ECF No. 27-4 ¶ 22.  It appears that he could not, as he concedes that Article

36 does not create a private right of action (discussed further, in Point II(C) below); no waiver of

immunity may be found for a non-existent cause of action; and the ATS, his alternate claim, does

not provide a waiver of sovereign immunity.  See Goldstar (Panama) S.A. v. United States, 967

F.2d 965, 968 (4th Cir. 1992) ("[A]ny party asserting jurisdiction under the Alien Tort Statute

must establish, independent of that statute, that the United States has consented to suit."); Koohi

v. United States, 976 F.2d 1328, 1332 n.4 (9th Cir. 1992) (noting that the ATS does not

constitute a waiver of sovereign immunity); Sanchez-Espinoza v. Reagan, 248 U.S. App. D.C.

146, 770 F.2d 202, 207 (D.C. Cir. 1985) (same).

### C.  Plaintiff Concedes There Is No Private Right of Action For The Alleged Article 36 Violations

Article 36 of the Vienna Convention "provides consular officers with access to their

nationals detained by authorities in a foreign country."  Clemente v. Doe, No. 18 Civ. 5968

(AMD), 2018 U.S. Dist. LEXIS 202529, at *4, 2018 WL 6250993, at *2 (E.D.N.Y. Nov. 29,

2018).  "[W]hen authorities arrest a foreign national, they must, if the detainee so requests, notify

the consular officers of the detainee's home country of the arrest.  Article 36(1)(b) further

provides that the 'authorities shall inform the [detainee] without delay of [these] rights.'"  Id.

(alterations in original) (quoting Sanchez-Llamas v. Oregon, 548 U.S. 331, 338 (2006)).

Plaintiff's opposition concedes that "Defendant is correct in its argument that Awan has no private right of action arising from the named [d]efendants having not contacted the Canadian Consul, or even arising from the failure of the named [d]efendants to have informed Awan of his right under the [Vienna Convention] to have the Canadian Consul notified of his arrest."  Opp., ECF No. 41, p. 6.  The Court agrees.  See De Los Santos Mora v. New York, 524 F.3d 183, 195 (2d. Cir. 2008) ("Thus, . . . we conclude that the requirement that an alien be informed of consular notification and access in Article 36(1)(b)(third) . . . does not establish a right in the alien that can be vindicated in a damages action for failure to inform the alien of the obligation."); Clemente, 2018 U.S. Dist. LEXIS 202529, at *5 ("An individual plaintiff has no private right of action to seek damages for violations of Article 36 rights to consular notification and access.") (citing Mora, 524 F.3d at 200, 208-09); Johnson v. City of New York, No. 12 Civ. 9242 (RA), 2014 U.S. Dist. LEXIS 10964, 2014 WL 323595, at *1, *4 (S.D.N.Y. Jan. 28, 2014) (dismissing complaint that alleged that officers failed to inform plaintiff of his rights under Article 36 of the Convention and that the arresting officer refused to inform the consulate that the plaintiff requested legal assistance); Gordon v. City of New York Police Dep't 84th Precinct, No. 10 Civ. 3706 (CBA), 2012 U.S. Dist. LEXIS 44154, 2012 WL 1067964, at *4-6 (E.D.N.Y. Mar. 29, 2012) (dismissing the plaintiff's claim that detaining officers failed to notify a consular officer of his arrest because the Vienna Convention does not provide a private right of action); Gordon v. City of New York Police Dep't 84th Precinct, No. 10 Civ. 3706 (CBA) (LB), 2010 U.S. Dist. LEXIS 122200, 2010 WL 4738694, at *2 (E.D.N.Y. Nov. 15, 2010) ("[The] plaintiff's claims arising from the defendants' alleged failure to inform him of his right to have consular officials notified of his detention . . . fail[ed] to state a claim."); see also Gandara v. Bennett, 528 F.3d 823, 829 (11th Cir. 2008) (Vienna Convention does not confer enforceable individual

rights); Cornejo v. County of San Diego, 504 F.3d 853, 860 (9th Cir. 2007) (Article 36 of the Vienna Convention does not create judicially enforceable rights that may be vindicated in an action under 42 U.S.C. § 1983); United States v. Emuegbunam, 268 F.3d 377, 394 (6th Cir. 2001) ("[T]he Vienna Convention does not create a right for a detained foreign national to consult with the diplomatic representatives of his nation that the federal courts can enforce."); cf. United States v. Li, 206 F.3d 56, 66 (1st Cir. 2000) (noting evidence of "a belief among Vienna Convention signatory nations that the treaty's dictates simply are not enforceable in a host nation's criminal courts," and holding that suppression of evidence is not a remedy available for violation of Article 36 of the Vienna Convention); United States v. Ademaj, 170 F.3d 58, 67 (1st Cir. 1999) ("[T]he Vienna Convention itself prescribes no judicial remedy or other recourse for its violation, let alone vacatur of a conviction."); but see Jogi v. Voges, 480 F.3d 822, 835-36 (7th Cir. 2007) (Article 36 does provide private right enforceable in a civil rights action).  Accordingly, the Court respectfully recommends that Plaintiff's cause of action under Article 36 of the Vienna Convention be dismissed.

### D.  Plaintiff's Claims Are Not Cognizable Under Well-accepted International Legal Norms And Cannot Be Brought Under The ATS

The ATS provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  28 U.S.C. § 1350.  The ATS is akin to 42 U.S.C. § 1983 insofar as it does not itself create substantive rights, but rather provides a procedural vehicle through which torts recognized either under the law of nations or treaties of the United States may be actionable.  See Turkmen v. Ashcroft, No. 02 Civ. 2307 (JG), 2006 U.S. Dist. LEXIS 39170, at *155-56, 2006 WL 1662663, at *50 (E.D.N.Y. June 14, 2006) aff'd in part, vacated in part on other grounds, remanded, 589 F.3d 542 (2d Cir. 2009); see also Mora, 524 F.3d 183, 208 ("[T]he ATS is a

jurisdictional statute . . . that also grants courts the power to recognize 'private causes of action for certain torts in violation of the law of nations.'") (quoting Sosa v. Alvarez-Machain, 542 U.S. 692, 724 (2004)).  In order to state a cause of action under the ATS for the violations alleged, the latter must be committed "in violation of the law of nations."  28 U.S.C. § 1350.  "To provide a cause of action under the ATS, a customary international law tort must meet a 'high bar' for recognizing new causes of action: it must be both specific and well-accepted."  Id. (citing Sosa, 542 U.S. at 725); see In re Arab Bank, PLC Alien Tort Statute Litig., 808 F.3d 144, 156 (2d Cir. 2015) ("As Justice Breyer noted in his [Kiobel v. Royal Dutch Petro. Co.] concurrence, the basic purpose of the ATS is to provide compensation to foreign plaintiffs injured by 'pirates,' 'torturers,' 'perpetrators of genocide,' and similar actors") (quoting Kiobel v. Royal Dutch Petro. Co., 569 U.S. 108, 131 (2013) (Breyer, J., concurring in the judgment)).

In Mora, the Second Circuit held that a violation of Article 36 – a failure to notify a detainee of his or her consular rights under the Vienna Convention – cannot support a cause of action under the ATS for a violation of the law of nations.  See Mora, 524 F.3d at 207-09.  In upholding the lower court's dismissal, the Second Circuit found that "none of the States-parties to the [Vienna] Convention, 'with one possible exception,' recognize such a tort in their domestic law."  Id. at 209.  A failure to inform a detainee of their rights under Article 36 could thus not be said to be a "well-accepted" tort in the international community as required to constitute a claim under the ATS.  Id. (citing Sosa, 542 U.S. at 737).

Plaintiff's second claim – that the agents themselves were obligated to notify the consulate – fairs no better.  Although the Second Circuit's express holding in Mora was confined to Article 36's requirement that a detainee be notified of consular rights, it would be a logical extension of Mora to conclude that if a defendant does not have a right to be informed of

consular notification rights, the defendant does not have the related right to require that notification be made.  In Mora, the factual record upon which its holding was based supports the conclusion that neither right is actionable in court:

> We requested that amicus the United States provide us with information regarding the judicial enforcement of alleged individual rights in the domestic courts of other States-parties to the Convention. The United States has informed us that in January 2007, the U.S. Department of State surveyed U.S. embassies worldwide, asking 'can an individual sue in court if he or she did not receive consular notification and/or access?' . . . 'With one possible exception,' the State Department was unable to identify any country in which an individual litigant could sue for money damages for violation of the consular notification and access provisions in Article 36. And 'with a handful of possible exceptions,' no other country's courts 'have construed the consular notification requirements of the Convention to create privately enforceable individual rights.' . . . .

Mora, 524 F.3d at 188 n.5 (internal citations omitted).  The factual record before the Second Circuit in Mora demonstrated that the claimed notification right was not a right established in the international community.  See Johnson, 2014 U.S. Dist. LEXIS 10964, at *9 n.4 ("failure to notify a consulate of a foreign national's arrest, despite his request, similarly does not rise to the level of those torts cognizable under the [ATS]"); Gordon, 2012 U.S. Dist. LEXIS 44154, at *22 (reviewing Mora's finding that tort claims for Article 36 violations were not "well-accepted" in the international community and concluding "In sum, there does not appear to be any reason to depart from Mora when the potential tort is based upon a failure to contact the consulate upon request, as opposed to failing to inform the detainee of the availability of consular notification and access."); Gandara v. Bennett, 528 F.3d 823, 830 n.1 (11th Cir. 2008) (Rodgers, J., concurring) ("Accordingly, as the majority recognizes, the law of this circuit is that the Convention does not confer individual rights that may be enforced through § 1983 (or § 1350)."); Karboau v. City of Portland, 498 Fed. Appx. 747 (9th Cir. 2012) (no private rights under Article 36 enforceable under the Alien Tort Statute, 28 U.S.C. § 1350).  Thus Plaintiff cannot, as a

matter of law, assert a claim under the ATS for a defendant's failure to notify his consulate as required by Article 36.

The Court has no basis to believe, let alone conclude, that civil suits by individual litigants for alleged Article 36 violations have been become "well-accepted" by the international community since <u>Mora</u> was decided.  Plaintiff has not offered – and the Court has not located – authority or evidence to suggest such a change in international legal norms has occurred.  <u>See</u> Opp., <u>generally</u>.  Further, the Supreme Court has expressly instructed courts to "exercise 'great caution' when considering private remedies for international law violations because of the risk of 'impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs.'"  <u>Mora</u>, 524 F.3d at 201 (quoting <u>Sosa</u>, 542 U.S. at 727-28); <u>see also Sosa</u> 542 U.S. at 727 ("Since many attempts by federal courts to craft remedies for the violation of new norms of international law would raise risks of adverse foreign policy consequences, they should be undertaken, if at all, with great caution.") (citation omitted); <u>id.</u> at 728 ("Justice Scalia . . . concludes that caution is too hospitable [a word]").  In light of these instructions and in the absence of any evidence in this record that international norms have shifted since <u>Mora</u> was decided, this Court cannot recommend finding a new cause of action under the ATS for an agent's failure to notify Plaintiff's consulate.  Thus, this Court respectfully recommends that Plaintiff's claims under the ATS be dismissed.

### E.  Plaintiff's Motion to Amend His Pleadings Should Be Denied As Futile Because, <u>Inter</u> <u>Alia</u>, His Proposed <u>Bivens</u> Claims Would Be Untimely

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).  Second Circuit precedent is clear that "[a] <u>pro se</u> complaint should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  <u>Dolan v. Connolly</u>, 794

F.3d 290, 295 (2d Cir. 2015) (quoting Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010)

(internal quotation marks omitted)).  Leave to amend need not be afforded when "[a]n

amendment to a pleading will be futile [because] a proposed claim could not withstand a motion

to dismiss pursuant to Rule 12(b)(6)."  Dougherty v. Town of N. Hempstead Bd. of Zoning

Appeals, 282 F.3d 83, 88 (2d Cir. 2002) (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119,

123 (2d Cir. 1991)).

      Plaintiff argues that he may reclassify his claims regarding the alleged Article 36

violations as deprivations of procedural due process rights theoretically actionable under Bivens.

See Opp., ECF No. 41 pp. 6-9.  "In Bivens, decided in 1971, the Supreme Court recognized a

damages remedy for violations of the Fourth Amendment's prohibition on unreasonable searches

and seizures by federal law enforcement officers."  Turkmen, 2018 U.S. Dist. LEXIS 137492 at

*10-11 (citing Bivens, 403 U.S. at 391-97).  The Supreme Court has extended an implied

damages remedy under the Constitution in only two other cases: Davis v. Passman, 442 U.S. 228

(1979), and Carolson v. Green, 446 U.S. 14 (1980).  See Ziglar v. Abbasi, 137 S. Ct. 1843, 1854-

55 (2017).  In Davis, the Court held that the Fifth Amendment Due Process Clause provided a

damages remedy for gender discrimination where "an administrative assistant sued a

Congressman for firing her because she was a woman."  Ziglar, 137 S. Ct. at 1854-55 (citing

Davis, 442 U.S. at 248-249).  Since then, and for the last thirty years, the Supreme Court has

declined to extend Bivens liability to any new context or category of defendants.  See Ziglar,

137 S. Ct. at 1857 (collecting cases); Air Sunshine, Inc. v. Carl, 663 F.3d 27, 33-34 (1st Cir.

2011) ("While the Supreme Court has extended Bivens to the Due Process Clause, it has only

done so in the context of 'the equal protection component' of that clause.") (citing Davis, 442

U.S. at 235).  The Court in Ziglar "made clear that expanding the Bivens remedy is now a

'disfavored' judicial activity."  Id.; see Turkmen, 2018 U.S. Dist. LEXIS 137492 at *12-13

("The Court in Ziglar went so far as to say that, were Bivens, Davis, and Carlson being decided

today, the analysis—and, presumably, the outcome—might be different.") (citing Ziglar, 137 S.

Ct. at 1856).  Further, and as discussed in Point II(B)(i), supra, Plaintiff's Article 36 rights to

consular notification do not have any ascertainable monetary value and do not qualify as a

"property interest" for purposes of procedural due process protection.  Against this backdrop, the

Court is skeptical that Plaintiff could, as a matter of law, assert the claims he proposes under

Bivens.  The Court need not decide this issue because, as Defendant argues, even assuming that

Plaintiff could assert his proposed claims, they would be untimely, and any amendment would

therefore be futile.

 "The statute of limitations for Bivens claims is governed by the statute of limitations

applicable to New York state law 'personal injury claims not sounding in intentional tort[,]'" i.e.,

three years.  Gonzalez v. Hasty, 802 F.3d 212, 219-20 (2d Cir. 2015) (quoting Chin v. Bowen,

833 F.2d 21, 23-24 (2d Cir. 1987)); NYCPLR 214(5).  A claim under Bivens accrues when the

plaintiff "either has knowledge of his or her claim or has enough information that a reasonable

person would investigate and discover the existence of a claim."  Gonzalez, 802 F.3d at 220

(citing Kronisch v. United States, 150 F.3d 112, 123 (2d Cir. 1998)).  Here, any claims Plaintiff

might have had under a Bivens theory flowing from the alleged Article 36 violations would have

accrued, at the very latest, when he received the August 14, 2007 letter from the consulate.

Plaintiff possessed enough information at that time to investigate and discover the existence of

his claims insofar as the letter informed him that the consular notification he claims to have

requested was not made until a later date.  See Compl., ECF No. 1 p. 16 of 18.  The present

action was not filed until almost nine years later, on February 17, 2016; thus, any Bivens claims

based on the violations alleged in the Complaint would be untimely by several years. Accordingly, this Court respectfully recommends that Plaintiff's proposed amendment to raise Bivens claims be denied as futile.  See Attestor Value Master Fund v. Republic of Arg., 940 F.3d 825, 833 (2d Cir. 2019) ("denial of leave to amend is proper if amendment would be futile"); Onibokun v. Chandler, 749 F. App'x 65, 67 (2d Cir. 2019) ("Leave to amend is futile when a plaintiff cannot cure the deficiencies in his pleadings to allege facts sufficient to support his claim.  The additional allegations that the Onibokuns could raise in a second amended complaint would not render their complaint timely.") (internal citation omitted); Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 62 (2d Cir. 2016) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.") (quoting Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 132 (2d Cir. 1993)); Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000) (stating that motion to amend may be denied as futile where claims barred by statute of limitations); Charlot v. Ecolab, Inc., 97 F. Supp. 3d 40, 68 (E.D.N.Y. 2015) ("Courts may deny a motion to amend where the proposed claims would be time-barred and therefore futile.").

## III.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends to the District Court that: (1) Defendant's motion to dismiss under Rule 12(b)(1) be granted; (2) Defendant's motion to dismiss under Rule 12(b)(6) be granted; (3) Plaintiff's motion to amend be denied; and, (4) the action be dismissed.

## IV.    OBJECTIONS

Written objections to this report and recommendation must be filed within seventeen days of service and in accordance with the Individual Rules of the Honorable Carol Bagley Amon. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008). Chambers will mail a copy to Plaintiff at 305 Saguenay Ave, Apt 2, Oshawa, Ontario L1J2M9, Canada.

Dated:  Brooklyn, New York
        February 3, 2020

_Vera M. Scanlon_
_____
VERA M. SCANLON
United States Magistrate Judge